UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LEROY HARDY,

                    Plaintiff,                    DECISION AND ORDER

      -v-

                                                      10-CV-6286 CJS

ROCHESTER GENESEE REGIONAL
TRANSPORTATION AUTHORITY,

                      Defendant.
_____

APPEARANCES

For Plaintiff:                    Christina A. Agola, Esq.
                                  Richard N. Franco, Esq.
                                  Christina Agola PLLC
                                  1415 Monroe Avenue
                                  Brighton, New York 14618

For Defendant:                Daniel J. Moore, Esq.
                                  Roy R. Galewski, Esq.
                                  Harris Beach LLP
                                  99 Garnsey Road
                                  Pittsford, New York 14534

INTRODUCTION

This is an action alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*., the New York Human Rights Law ("NYHRL"), Executive Law § 290 *et seq*., and 42 U.S.C. § 1981 ("Section 1981"). Now before the Court is Defendant's Motion for Summary Judgment (Docket No. [#15]). The application is granted.

BACKGROUND

Unless otherwise noted, the following are the facts of this case, viewed in the light most-favorable to Plaintiff. Defendant is a public transportation authority in Rochester, New York. Plaintiff worked for Defendant as a bus driver for twelve years, between August 1997 and December 29, 2009. Specifically, Plaintiff worked for Lift Line, Inc., a subsidiary of Defendant, which provided curb-to-curb transportation for disabled persons who were unable to use Defendant's conventional bus system. *See*, Pl. Dep. at p. 46. Plaintiff had an extensive disciplinary history prior to any of the events at issue in this case. Specifically, prior to 2007, Plaintiff was "frequently" disciplined for committing work-rule violations. *See*, Pl. Resp. to Def. Stmt. of Facts ¶ 18 (Admitting that he was "frequently disciplined for various violations of Lift Line rules, policies and established practices."). Plaintiff's misconduct included being late for pickups, leaving a passenger unattended on his running bus, while he took a break, falsifying a damage report, failing to perform safety checks, and using his bus to transport his grandchildren.

Plaintiff generally admits engaging in the conduct that led to such discipline, though he also maintains that the instances of discipline were unfair to him for a variety of reasons. For example, on one occasion in 2002, when Plaintiff was warned for failing to lower the bus ramp for a handicapped passenger, he maintains that the ramp was broken, even though the disciplinary report specifically indicated that the ramp and had been tested and was functioning properly. On another occasion in 2004, when Plaintiff was disciplined for falsifying the time that he picked up a passenger in order to hide the fact that he was late, he indicates that the discipline was unfair because it was "customary" for drivers to write

2

down the wrong time. Pl. Dep. at p. 112.  With regard to another disciplinary incident, involving his failure to keep his radio turned on, Plaintiff maintains that several other bus drivers also turned their radios off but were not disciplined.  This assertion, though, is based only on his belief, from listening to the bus company's radio while driving, that those drivers did not respond to certain calls. *See*, Pl. Dep. at pp. 96-101.  Plaintiff maintains that generally, he was singled out for discipline because he is Black and because he was a union representative.

In any event, in April 2007, following another disciplinary infraction, Defendant issued Plaintiff a "final warning" indicating that any future violations would result in the termination of his employment.  Plaintiff disputes whether the final warning was fair, but he cannot claim that it was retaliatory under the statutes at issue here, since, at the time the warning was issued, he had not engaged in any protected activity.

Subsequently, and for approximately the next two years, Plaintiff avoided any disciplinary infractions.  During that period, in October 2007, two other bus drivers, Michael Talton, who is African American, and Enio Rivera, who is Hispanic, filed a discrimination complaint against Defendant in this Court.  In May 2009, Plaintiff provided an affidavit in support of Talton's and Rivera's lawsuit, alleging that he had witnessed various acts of harassment and retaliation against them. Also during this period, on July 13, 2009, Plaintiff testified at a deposition in Talton's and Rivera's lawsuit, after being subpoenaed by Defendant.

On August 16, 2009, Plaintiff was caught speeding while on duty driving a Lift Line bus.  Video evidence established that Plaintiff drove 71 mph in a 55 mph zone, and that he

3

drove 66 mph in a construction zone having a 45 mph speed limit. Plaintiff does not dispute that he was guilty of speeding. Pl. Dep. at pp. 142-144. However, he contends that other drivers "routinely" drove above the speed limit. *Id*. As a result of this speeding incident, which occurred after Plaintiff's final warning, Defendant decided to terminate Plaintiff's employment. However, on November 12, 2009, Plaintiff's labor union convinced Defendant to consider a less severe punishment. On November 17, Defendant and Plaintiff entered a "Last Chance Agreement," under which Plaintiff would keep his job, provided that he complied with "all Lift Line rules and regulations" and "all traffic and motor vehicle operating laws." Pl. Resp. to Def. Stmt. of Facts ¶ 35. Plaintiff agreed that if he failed to do so, Defendant could immediately terminate his employment, and that if such termination occurred within one year of the Last Chance Agreement, he could not challenge the severity of his punishment under the Collective Bargaining Agreement (CBA). *Id*. at ¶ ¶ 35-36.

Approximately two weeks later, a private citizen complained to Defendant that Plaintiff had made an illegal left-hand turn from a right-turn-only lane, and had almost collided with his car. Defendant investigated, and the evidence, including videotape from the bus's cameras, established that Plaintiff had made a left turn from a right-turn only lane, cut off the car in the outside left-turn lane, and then passed that vehicle on the right. Plaintiff admitted that he made the illegal turn, but nevertheless maintains that he was operating the bus safely.

On December 10, 2009, Defendant charged Plaintiff with unsatisfactory job performance, based on the illegal turn.

On December 15, 2009, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC). Plaintiff alleged that he was being singled-out for retaliation, for providing testimony in the action involving Talton and Rivera. Pl. Appendix Vol. II, Ex. C.

On December 16, 2009, Defendant held a hearing, and on December 29, 2009, Defendant notified Plaintiff that his employment was being terminated, since he violated the Last Chance Agreement.

On January 5, 2010, Plaintiff filed a second complaint with the EEOC, that was virtually identical to the first EEOC complaint, except that it referenced the termination of his employment. On or about March 23, 2010, the EEOC dismissed both of Plaintiff's charges and issued "right-to-sue" letters as to both complaints.

On May 26, 2010, Plaintiff commenced this action. The Complaint alleges that Defendant retaliated against Plaintiff, in violation of Title VII, Section 1981 and the NYHRL. In that regard, the Complaint indicates that Plaintiff "was singled out for being an 'unprofessional driver,' when other similarly situated co-workers engaged in worse conduct were not subject to such scrutiny," after he gave testimony in connection with the lawsuit by Talton and Rivera. Complaint ¶ ¶ 27-28. The Complaint further states that Defendant retaliated against Plaintiff by terminating his employment twelve days after he filed his first EEOC complaint. Accordingly, the Complaint alleges two acts of protected activity: 1) providing testimony in the Talton and Rivera lawsuit; and 2) filing the EEOC complaint on December 15, 2009.

Although the Complaint twice mentions that Plaintiff is an African American male, such fact is really irrelevant to his claim, since the Complaint does not allege that he personally suffered racial discrimination. Instead, the Complaint merely indicates that Plaintiff engaged in protected activity by opposing racial discrimination aimed at Talton and Rivera. *See*, Complaint ¶ 36 ("Plaintiff engaged in protected activity concerning national origin/race discrimination by defendants and opposed the discriminatory conduct that *other minorities* suffered at the hand of the defendant.") (emphasis added). The Complaint does contain a "cookie cutter" boilerplate allegation, that states: "Defendants [sic], and each of them [sic], engaged in a pattern of illegal retaliation because the Plaintiff had complained of national origin/race discrimination directed at himself and others." Complaint ¶ 40. However, this conclusory boilerplate statement is not supported by any factual allegation that Plaintiff actually suffered, or complained about, "national origin/race discrimination" directed at him. Moreover, Plaintiff admits there is no racial discrimination claim in this action. *See*, Pl. Resp. to Def. Stmt. of Facts, ¶ ¶ 66-68.

On November 7, 2011, Defendant filed the subject motion for summary judgment. Defendant maintains that Plaintiff cannot establish a prima facie case of retaliation, because he did not suffer an adverse employment action that is causally-related to his protected activity. Defendant further contends that even if Plaintiff can demonstrate a prima facie case, he cannot show that the proffered reasons for the adverse employment actions are pretextual.

Plaintiff disagrees. As to that, Plaintiff maintains that he suffered "multiple adverse employment actions," though he identifies just two. Pl. Memo of Law at p. 5. First, he states

6

that he experienced an adverse employment action when Defendant "compelled" him to sign the Last Chance Agreement in November 2009, which included a waiver of rights under the CBA. *Id*. at p. 6-7 ("Plaintiff, having been compelled to sign the last chance agreement, was put into a state of *de facto* probation after nearly two years without any disciplinary problems and only months after testifying against Defendants."). Of course, that argument fails to take into account that Plaintiff had already been issued a final warning prior to the protected activity, and was therefore "on probation" long before the Last Chance Agreement was signed. As for the second purported adverse employment action, Plaintiff cites the termination of his employment. Plaintiff further maintains that these adverse employment actions are causally related to his involvement in the discrimination lawsuit brought by Talton and Rivera. On this point, Plaintiff states that a causal nexus is established by the temporal proximity between the adverse actions and the protected activity which occurred months earlier. With regard to this delay of several months, Plaintiff asserts that rather than immediately attempting to retaliate against Plaintiff in or about July 2009, Defendant "waited to seize the first opportunity [it] could to set Plaintiff on a path to termination." Pl. Memo of Law at p. 10.

Plaintiff also contends that the retaliatory nature of his firing is indirectly shown by the fact that he had not been terminated during the prior twelve years of his employment. *Id*. at p. 11 ("In order for Defendant's argument to hold water one would have to assume that although Plaintiff was never terminated, or placed on a last chance agreement in twelve (12) years, Plaintiff's job performance just happened to become poor enough to warrant discipline and eventual termination within just months of his testimony against Defendants.").

Again though, such argument ignores the fact that Plaintiff had already been given a final warning prior to any protected activity. Nevertheless, Plaintiff insists that he has met the admittedly-low threshold required to establish a prima facie case.

Plaintiff further indicates that he has come forward with enough evidence to raise a triable issue of fact as to whether Defendant's proffered reasons are pre-textual. Plaintiff states that even though he was disciplined for conduct that he admittedly committed, that is, speeding and later making an illegal turn, both after having received a final warning, a reasonably jury could nevertheless find that retaliation was a motivating factor behind Defendant's decisions. Plaintiff also argues that his disciplinary record, prior to the protected activity, has been exaggerated, since "most" of the disciplinary issues were "relatively minor tardiness issues, which under the terms of the [CBA] are to be expunged every 2 years, or controverted incidents." *Id*. at p. 13. The Court observes, however, that, while the CBA does indicate that an employee's "attendance record" shall be expunged after 2 years of clean attendance,[1] Defendant's "non-exhaustive" list of Plaintiff's disciplinary incidents leading up to the final warning includes seven incidents, only one of which involves attendance (Specifically, 62 separate instances of tardiness in 2002-2003). Moreover, to the extent that Plaintiff now contends that the final warning was unwarranted because the underlying infractions were "controverted," Plaintiff admitted at his deposition that he in fact committed most, if not all, of the infractions, although he felt that the penalties imposed on him were too severe.

---

[1] Pl. Appendix II, Exhibit I, CBA at p. 4.

On September 6, 2012, counsel for the parties appeared before the undersigned for oral argument of the motion.

## DISCUSSION

*Rule 56*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), cert denied, 517 U.S. 1190 (1996). Once that burden has been established, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(2). The underlying

9

facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).[2]

Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and internal quotations omitted). However, a plaintiff may not defeat a motion for summary

---

[2] Although it does not affect the ruling here, the Court notes that in reviewing Plaintiff's deposition transcript, it appears that he attempted to obstruct Defendant's counsel's questioning at times, and almost certainly gave untruthful testimony at various points. For example, Plaintiff, who worked for Defendant for twelve years, who completed a 21-day training program, and who, as a Union representative was familiar with the Collective Bargaining Argreement, testified that he was NOT aware that: 1) driving recklessly or in violation of the law could result in his termination; 2) he was required to obey Defendant's operating and highway rules; and 3) he should not drive at excessive speeds. Pl. Dep. at pp. 64-65. At another point in the deposition, Plaintiff was asked about an incident, for which he was disciplined, in which he fought with a man on the bus, and was specifically asked whether a woman named Lisa Lance had any involvement in the incident. Plaintiff expressly denied that, stating, "*She didn't have any involvement in this issue, no.*" Pl. Dep. at p. 86. Plaintiff further suggested that a "crazy" man had simply gotten on the bus and attacked him for no reason. *Id*. However, when confronted with documentation, Plaintiff admitted that both he and the other man had a relationship with Lisa Lance, and that they were fighting about her. *Id*. at pp. 87-88. As another example, Plaintiff testified that he did not realize that the final warning was a final warning. Plaintiff stated that he had read the "Final Warning" that Defendant issued him in 2007, which included the statement, "This is your final warning. Any future infractions will result in discharge," but did not realize that it was a final warning. *Id*. at pp. 135-136 ("Q. So you're saying you did not know that you had a final warning? A. No, I didn't – I didn't realize that last sentence was in there. . . . Q. But did you not read it? A. I read it. Q. But you didn't appreciate the fact that this was a final warning? A. Yes, I did. But I'm telling you I was just now aware that this was a final warning. Q. I'm not following you. A. I wasn't aware of that. Q. You read – A. *I read what it said, but I wasn't aware of it*.") (emphasis added).

judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. den*. 474 U.S. 829.

*Retaliation Claims*

The substantive legal principles for claims under Title VII also apply generally to claims under Section 1981 and the NYHRL. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010); *see also, Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) ("Retaliation claims made under 42 U.S.C. § 1981, like those made under Title VII, are evaluated using a three-step burden-shifting analysis."). Such principles for retaliation claims are clear:

> "Retaliation claims under Title VII are evaluated under a three-step burden-shifting analysis." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir.2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish a prima facie case of retaliation by showing: " '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.' " *Jute*, 420 F.3d at 173 (*quoting McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir.2001)). The plaintiff's burden in this regard is "*de minimis*," and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id*. (internal quotation marks omitted).
>
> If the plaintiff sustains this initial burden, "a presumption of retaliation arises." *Id*. The defendant must then "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id*. If so, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." *Id*. A plaintiff can sustain this burden by proving that "a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action]." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990).

*Hicks v. Baines*, 593 F.3d 159, 164-165 (2d Cir. 2010).

To make a prima facie showing of an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006) (*quoting Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2415 (2006)).

Further, as to the prima facie case, causal nexus can be established by temporal proximity between the protected activity and the alleged retaliation. However, temporal proximity alone does not create an inference of retaliation when the adverse action is part of, or the culmination of, a disciplinary process that was already underway prior to the protected activity. *See, Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("[I]n this case the adverse employment actions were both part, and the ultimate product, of an extensive period of progressive discipline which began when Swiss Re diminished Slattery's job responsibilities a full five months prior to his filing of the EEOC charges. Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.") (internal quotation marks omitted).[3]

---

[3] *But see, Gordon v. Health & Hospitals Corp.*, No. 06 CV 1517(RJD)(LB), 2008 WL 924756 at *11 (E.D.N.Y. Mar. 31, 2008) ("Defendants cite the Second Circuit's opinion in [*Slattery*] for the principle that "where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." 248 F.3d 87, 95 (2d Cir.2001). This case, however, is distinguishable. The *Slattery* Court concluded that "the adverse employment actions were both part, and the ultimate product, of 'an extensive period of progressive discipline'" which began when [defendant] diminished Slattery's job responsibilities a full five months prior to his filing of the EEOC charges." *Id*. While it is clear that Gordon had a significant disciplinary record, it is also not

### *Plaintiff has not made a prima facie showing of causal nexus*

In this case, even assuming that Plaintiff suffered an adverse action, he has not established a prima facie case of retaliation, since he has not shown a causal relationship between such adverse action and the protected activity. As discussed earlier, Plaintiff relies on two adverse employment actions: 1) the Last Chance Agreement; and 2) the termination of his employment. As to both of those, he relies on temporal proximity to establish the required causal nexus. More specifically, he maintains that he was forced into the Last Chance Agreement[4] approximately six months after providing an affidavit to Talton and Rivera, and approximately four months after testifying at a deposition in their action. He further points out that he was terminated only days after filing his first EEOC complaint.

However, the Court does not agree that Plaintiff has shown a sufficient causal nexus. First, with regard to the four-to-five month lapse between Plaintiff's involvement in the Talton/Rivera lawsuit and the Last Chance Agreement and termination of his employment, it is questionable whether there is sufficient temporal proximity to establish causal nexus. *See, Tori v. Marist College*, 344 Fed.Appx. 697, 701-702 (2d Cir. Sep. 2, 2009) (Expressing doubt as to whether three months was sufficient to establish a causal connection). More importantly, under the *Slattery* exception discussed above, Plaintiff cannot rely on temporal

---

contested that almost four years passed without incident prior to the events that eventually lead to this action. Thus, her disciplinary record cannot be construed as "an extensive period of progressive discipline."), *aff'd*, 350 Fed.Appx. 547 (2d Cir. Oct. 28, 2009). In this case, although Plaintiff managed to avoid any disciplinary actions during the two years leading up to the protected activity, the *Gordon* case is distinguishable, since, for example, Plaintiff had already been issued a final warning which remained in place at all relevant times.

[4]Plaintiff's contention that he was "compelled" to enter the Last Chance Agreement is not supported by the record, which shows that it was Plaintiff's union which requested the Last Chance Agreement as an alternative to the termination of Plaintiff's employment, after he was caught speeding.

13

proximity to establish his prima facie case since, not only was he he was already subject to progressive discipline, he had been issued a final warning, even before he engaged in protected activity. *See, Sales v. New York City Transit Auth.*, No. 08 Civ. 3420, 2011 WL 4000988 at *5 (S.D.N.Y. Aug. 26, 2011) (No inference of retaliation arose where Plaintiff was issued final warning years before the alleged adverse employment actions); *Revere v. Bloomingdale's, Inc.*, No. 03 CV 5043(SLT)(WDW), 2006 WL 3314633 at *10, n. 5 (E.D.N.Y. Nov. 14, 2006) (Holding, pursuant to *Slattery*, that the fact that plaintiff had been issued a final warning months before the protected activity "severely undercut" the element of temporal proximity).

To the extent that Plaintiff maintains that he has also demonstrated causal nexus by showing that he was "singled out" for disciplinary action, the Court disagrees. In that regard, Plaintiff contends, with regard to the August 2009 speeding incident, that "all" of Lift Line's drivers routinely violated the speed limit, but unlike him, they were not disciplined. He further suggests that other drivers committed infractions such as his illegal turn, but were not disciplined. However, Plaintiff has not produced evidentiary proof in admissible form that any similarly-situated driver committed similar infractions and was not disciplined. At most, in his deposition Plaintiff alleged that, prior to his final warning, and thus years prior to his termination, he was disciplined for turning off his radio, while certain white drivers also turned off their radios but were not disciplined. Pl. Dep. at pp. 96-102. This case, though, is not one of race discrimination, and in any event, Plaintiff has not cited any evidentiary proof in admissible form to support his belief that the white drivers were treated more favorably with respect to turning off their radios. *Id*. On the other hand, Defendant has

14

proffered proof that, around the same time that it fired Plaintiff, it terminated the employment of two other drivers, who had not engaged in protected activity, for committing infractions comparable to Plaintiff's. See, Pl. Resp. to Def. Stmt. of Facts ¶ ¶ 56-57 (One driver was terminated for speeding, and the other for talking on the phone while driving).

*Plaintiff cannot show that Defendant's reason is pre-textual*

Even assuming *arguendo* that Plaintiff could demonstrate a prima facie case, he has failed to come forward with any evidentiary proof in admissible form that Defendant's proffered reason for the discipline at issue was pre-textual. As to this issue, Defendant maintains that it entered into the Last Chance Agreement with Plaintiff because he was guilty of speeding, and that it terminated his employment because he admitted to making an illegal turn only two weeks after entering the Last Chance Agreement. Plaintiff insists that this explanation is pre-textual. Plaintiff first contends that his disciplinary record was not the true reason for Defendant's actions, since such record, leading up to the final warning, involved mostly "relatively minor tardiness issues." Pl. Memo of Law at p. 13. On this point, Plaintiff reasons that his disciplinary record must have been "relatively benign," since Defendant kept him as an employee for over twelve years. *Id*. at pp. 13-14. However, as mentioned above, Plaintiff's description of his disciplinary record is not accurate. Rather, the record indicates that before Plaintiff ever engaged in protected activity, Defendant was so dissatisfied with his performance that it issued him a final warning, indicating that "[a]ny future infractions will result in discharge." Moreover, Plaintiff's subjective opinion as to the severity or fairness of his disciplinary record is not sufficient to create a triable issue of fact. *See, Silva v. Peninsula Hotel*, 509 F.Supp.2d 364, 386 (S.D.N.Y. 2007) ("[W]hat constitutes

satisfactory job performance is measured by the employer's criteria, not by some hypothetical objective criteria, or by the employee. . . . Plaintiff's subjective belief that he was not treated fairly is simply not enough to demonstrate pretext.") (citations and internal quotation marks omitted).

Plaintiff further maintains that "circumstantial evidence" of record creates a triable issue of fact as to pretext. Pl. Memo of Law at p. 14-15. However, the Court again disagrees. The Court also views Defendant's willingness to enter into the Last Chance Agreement as weighing against an inference of pretext, since, if it had really been Defendant's objective to retaliate against Plaintiff, it could have simply terminated him following the speeding incident. For these reasons, the Court finds that Plaintiff has failed to raise a triable issue of fact as to whether Defendant's proffered reasons are pre-textual.

## CONCLUSION

Defendant's application for summary judgment [#15] is granted, and this action is dismissed. Defendant's motion to opt-out of alternative dispute resolution [#25] is denied as moot. The Clerk of the Court is directed to close this action.

SO ORDERED.

Dated:  September 12, 2012
        Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge